Louis O. Satterfield, Jr., Lynn C. Woods, Jr., James E. Sloan Woods, Harman & Satterfield, Houston, for appellee.

Edgar A. WILLIAMSON, et al., Appellants,

v.

MOBIL PRODUCING TEXAS & NEW MEXICO INC., Appellee.

No. 09 86 235 CV.

Court of Appeals of Texas, Beaumont.

Decided Sept. 17, 1987.

Rehearing Denied Oct. 7, 1987.

OPINION

PER CURIAM.

Edgar A. Williamson and wife Mary Eleanor Williamson (herein "the Williamsons"), with others, as lessors, executed and delivered an oil, gas and mineral lease to Mobil Producing Texas & New Mexico Inc. (herein, "Producing, Inc."). The lease was recorded in the Deed Records of Hardin County, and contained this provision:

"3. The royalties to be paid by lessee are:

"(a) on oil and other liquid hydrocarbons saved at the well, 27.5% of that produced and saved from said land, same to be delivered at the wells or to the credit of lessor in the pipeline to which the wells may be connected....

"(b) on gas and casinghead gas produced from said land:

"(1) when sold or used by lessee for the extraction of gasoline or other products therefrom, 27.5% of the mar-

ket value at the well of the gas so sold or used, provided that the market value shall not exceed the net amount realized by lessee from the sale of gas and extracted products, including gasoline and residue gas ("net amount realized" being defined as proceeds received by lessee from the sale less all cost and expenses incurred by lessee from the mouth of the well through sale, excluding normal field separation expense which lessee alone shall bear). In the event the gas is processed in a plant in which lessee owns an interest, lessee may include as expense amortization of its investment in pipelines, the plant and its facilities plus a reasonable rate of return thereon. The use by lessee of all or any part of the extracted products, including gasoline and residue gas, for its own account shall for the purposes hereof be deemed a sale at the market price prevailing at the plant at the time of use by lessee, provided, however, if the price of any product, gasoline or gas is regulated by any governmental agency, market price of such product, gasoline or gas for the purposes of computing royalty on such product, gasoline or gas used by lessee shall not be in excess of the price permitted by such regulations. If a refund of a portion of the proceeds derived from the sale of gas may be required under any order, rule or regulation of the Federal Energy Regulatory Commission or other governmental agency having jurisdiction thereof, net amount realized shall be calculated on the basis of the unsuspended and/or unconditional certificated price for such gas which lessee receives. Lessee may hold without interest the portion of any proceeds subject to possible refund until the amount of refund, if any is determined by final unappealable order of the Federal Energy Regulatory Commission or other governmental agency;"

Such were the written, express lease provisions concerning royalties to be paid by the lessee. This lessee must have valued the lease highly, being willing to pay the 27.5% royalties.

Basically, this part of the litigation was brought by the Appellants against the Appellee for the breach of a contract, being the written oil, gas and mineral lease.

This appeal was from the granting of a summary judgment in favor of "Producing, Inc.", the lessee. In the District Court, at an earlier stage of the lawsuit, both the Appellee and the Appellants were cast in the role of co-defendants. The Appellants then cross-acted over and against the Appellee, lessee, for breach of contract rising out of a decision—said by the Appellants to have been unilateral and unjustified—to suspend all royalty payments during the pendency of the original cause of action filed by Choice M. Thompson, et ux.

The relief that the Appellants ask for here is a reversal of the adverse summary judgment. They argue that they were entitled, under the written lease contract, to recover their attorneys' fees and expenses, and that there were material issues of fact existing as to the amounts of such reasonable attorneys' fees and expenses. In their brief, Appellants say that the background of this appeal would be beneficial to an understanding of the controversy. We will attempt to comply.

Appellants say that Syble Day Thompson and Choice M. Thompson originally filed a cause of action alleging a bad faith pooling case against Mobil Producing Texas & New Mexico Inc., the Union Texas Petroleum Corporation, and J.M. Huber Corporation. The Thompsons, being the original plaintiffs in the suit, had alleged that Producing, Inc., and Huber, had pooled the Thompsons' oil producing tract in bad faith with other allegedly unproductive tracts of land. On Choice Thompson's tract, the Choice Thompson Number One Well had been drilled and completed as an excellent commercial producer.

The Choice Thompson Number One Well is said to be one of the Producing, Inc.'s

largest on-shore producers. We think that it is correct to state that the amount of production was unusually high in that the amount of the royalties (not including the total production), accumulated during approximately the first five months prior to the settlement of the main case, was $1,214,215.95, which worked out to be royalties of about $243,043.00 per month.

In the original suit there were a large number of other non-drill-site landowners who were also originally named as defendants by the Thompsons. After the Choice Thompson Number One Well came in and proved to be a profitable and prolific producer, then the oil company defendants apparently immediately sought leases from some of the surrounding landowners.

In March of 1985, the Appellants and the Appellee executed oil, gas and mineral leases covering the Appellants' property which was located adjacent to or near the well site. One of the terms of the Appellants' leases required, in a special typewritten paragraph, that Appellants' property would definitely be pooled or unitized with the Choice Thompson tract. That typewritten paragraph provided that the lessee agreed to pool within 120 days all of the said Williamsons' lands with other lands to form a Gas Unit surrounding the Choice Thompson Number One Well, and the only penalty for not pooling the said lands would be the forfeiture of the lease by the lessee. Thereafter, Producing, Inc., did pool the Appellants' property with the Choice Thompson Number One Well. Large royalties were paid for several months to the Williamsons. Then, after the Thompsons filed their original suit, the lessee determined to withhold all royalty payments to the individual defendants pending the outcome of the litigation. Appellants argue that this deprived them of royalties amounting to about $20,000.00 per month. Hence, they filed a cross-action against the lessee for breach of a written contract.

The Thompson lease contained a pooling provision in which the lessee was granted the right to pool or unitize the Thompsons'

tract with other tracts. Paragraph 5 of the Williamsons' leases provided, inter alia, the following:

"Lessee shall file written unit designations in the county in which the premises are located. *The unit shall become effective on the date provided in the designation or, if the designation makes no such provision, it shall become effective upon the date it is filed for record. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty or leasehold interests in lands within the unit which are not effectively pooled or unitized.* Such units may be designated any time before or *after the completion of a well or wells or production therefrom and lessee may reduce, enlarge, modify or dissolve such unit or units at any time prior to the discovery of oil, gas or other minerals on the pooled acreage, or, after discovery of same, at any time subsequent to the cessation of production thereof,* by filing a written declaration to such effect in the same county ... In lieu of the royalties herein provided, *lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit* or his royalty interest therein on an acreage basis *bears to the total acreage so pooled* in the particular unit involved." (Emphasis as set out by Appellants)

We decide that the lease agreement determines the basic rights between the parties of this appeal.

### The Division Orders

Appellee argues that certain division orders executed by the Appellants gave it the right to suspend the payment of royalties. But these division orders were granted to another, separate corporation, not to Producing, Inc. These orders authorized the suspension of royalty payments in the event of a valid "title dispute". There is no

"title dispute" in the case subjudice. Furthermore, no consideration for the division orders was paid by Producing, Inc., to the Williamsons. We determine that the division order, under our record, executed in favor of another separate corporation, would not diminish nor destroy the obligations, duties and covenants of the Appellee under the oil, gas and mineral lease insofar as these Appellants are concerned.

The very first paragraph of the lease provides:

"Lessor, in consideration of $Ten and No/100—Dollars ($10.00), in hand paid, receipt of which is here acknowledged, *and of the royalties herein provided and of the agreements of the lessee herein contained,* hereby grants, leases and lets exclusively unto lessee...."
(Emphasis added)

There can be no doubt that this was an express agreement of the lessee to pay the royalties. The payment of royalties, we think, is the paramount consideration for the lease. The recitation of $10.00 is but nominal. The lessee specifically agreed as a part of the consideration of the lease to pay the royalties provided therein.

There is a pertinent provision, reading in part:

"[T]his lease shall remain in force for a term of one (1) years [sic] from this date (called 'primary term') and as long thereafter as oil, gas, sulphur, fissionable material or other mineral is produced from said land or land with which said land is pooled."

The lessee specifically agreed and covenanted to pay the oil royalties to the credit of the lessors when oil was delivered in the pipeline to which the wells may be connected. Then the royalty clause "(b)", on gas or casinghead gas, stated:

"(1) when sold or used by lessee for the extraction of gasoline or other products therefrom, 27.5% of the market value at the well of the gas so sold or used, provided that the market value shall not exceed the net amount realized by lessee from the sale of gas and extracted products, including gasoline and residue gas ('net amount realized' being defined as proceeds received by lessee from the sale less all cost and expenses incurred by lessee) from the mouth of the well through sale...."

"(2) when used by lessee for any purpose other than the extraction of gasoline or other products therefrom and those permitted by numbered paragraph 7, 27.5% of the market value at the mouth of the well of such gas or casinghead gas, provided, however, that lessee shall in no event be required to determine and change market value more often than once every calendar year. Changes made shall be prospective only. If the price of gas or casinghead gas is regulated by any governmental agency, the market value for the purposes of computing royalty hereunder shall not be in excess of the price permitted by such regulations...."

Now, admittedly, we have had to procure a fairly powerful magnifying glass to read the leases and some of the exhibits in this record. Some of the parts of the leases are "whited out". These parts were not reproduced in the exhibits. We have done the best we can with these incomplete photostatic copies. If we have misquoted a word or a phrase, it is because we simply have had to deal with partially illegible exhibits.

The lessee clearly had made an express, written agreement to pay the royalties to the Williamsons and to continue to pay the royalties to the Williamsons until production ceased. In fact, Appellee paid the royalties until the Thompson lawsuit was filed. Without consultation with the Williamsons, the lessee stopped making the royalty payments. We hold that a material fact issue was raised concerning a breach of express covenants and agreements in the lease. We deem a fact issue was raised as to breaching the actual consideration for the lease.

Paragraph 5, of the lease, in pertinent part, provides:

"Such units may be designated any time either before or after the completion of a well or wells or production therefrom and lessee may reduce, enlarge, modify or dissolve such unit or units at *any time prior to the discovery of oil, gas or other minerals on the pooled acreage, or, after discovery of same, at any time subsequent to the cessation of production thereof,* by filing a written declaration to such effect in the same county...." (Emphasis added)

So, clearly, the lessee, if it is "after the discovery of the same," can change the pooling unit only subsequent to the cessation of production. Under our record, the production has been constant since discovery. In fact, the royalty payments were later resumed and the full royalty payments were restored to the Williamsons. We determine that the Appellee, under this record, is a separate and independent corporation. This is not challenged by Appellee.

It is now settled law, involving oil and gas leases, that the rights, duties and obligations of both the lessor and the lessee are determined by the lease and, therefore, contractual. Furthermore, the lease constitutes a contract and, in our case, was on a printed form with several typewritten paragraphs. *Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981). Furthermore, lessee agreed and contracted to pool the Williamsons' property with the fabulously productive Choice Thompson No. 1 Well and, thereafter, it would not reduce nor modify nor dissolve the unit at any time after discovery and prior to the cessation of production of minerals therefrom. The withholding of royalty payments brought about a breach of a written contract containing an express covenant for which the Appellants were entitled to recover past due royalties, interest, reasonable expenses, and reasonable attorneys' fees. *Verble v. Coffman,* 680 S.W.2d 69 (Tex.App.—Austin 1984, no writ).

We find that there was no bona fide title dispute as to the Williamsons' title. The only dispute was as to whether or not a certain unit or production was made in good faith or bad faith, which was a dispute between the Thompsons and the lessee.

The division order relied upon by Producing, Inc., required a real, honest, bona fide title dispute concerning the title of the Williamsons' land. We find no such title dispute here.

In the case of *Verble, supra,* the Austin Court of Appeals held, at page 71:

"We hold that a suit for damages for breach of an oil and gas lease is a suit on a contract within the purview of art. 2226."

The argument was made in *Verble,* by the lessee that he should not be liable for breach of contract because he interpleaded and deposited the disputed royalty in the registry of the court. But, again, the Austin court's response was:

"He cites no authority for this assertion and we find none."

The Austin court went further in *Verble,* saying:

"We hold that a defensive interpleader, brought after the institution of a suit to recover the disputed funds, is not a defense to the award of attorneys' fees."

### The Motion of the Cross-Defendant, Producing, Inc., for Summary Judgment Against the Williamson Defendants

In its motion, we notice that the movant set out that Appellee, along with Huber and Union Texas Petroleum Corporation (the companies), established a 703.96 acre gas unit, designated as the Choice Thompson Unit No. 1 consisting of the lands and leases described in a certain "Unit Designation, Choice Thompson Unit Number 1", dated June 4, 1985. Later, on November 21, 1985, this unit was amended, but was effective as of June 21, 1985. The lands owned by the Williamson defendants and covered by the Williamson leases were included in this unit along with the Choice Thompson lands and other lands.

In this same motion, the movant set out that, about November 11, 1985, Mobil Oil Corporation purchased Producing, Inc.'s share of the production from the unit. Thereafter, the purchaser, Mobil Oil Corporation, sent out its own division orders to all the owners of the interests in the unit, including the Thompson and Williamson defendants. The Thompson defendants refused to execute these division orders. Then, on December 26, 1985, the Thompsons filed the main case. The Thompsons alleged the underpayment of royalties to themselves and that the establishment of the unit was done in bad faith because the companies were including, in the unit, lands which were not susceptible of production from the Thompson well. [It should be noted, here, that the Thompsons did not attack the Williamsons' title.]

Then, on about January 20, 1986, Producing, Inc., suspended the payment of all royalties with respect to the production from the Thompson unit. Later, on April 18, 1986, Producing, Inc., filed a defensive interpleader action in the Thompson main suit. In its motion, lessee gave no reason for this action. We simply perceive that *TEX.R.CIV.P. 166–A(c)* was not complied with because we think the Motion for Summary Judgment did not state the specific grounds for suspending the royalty payments.

The motion did state that, later on, in June, 1986, the companies and the Thompsons—but not the Williamsons—presented a joint motion to the Court requesting a dismissal of the original, main case with prejudice to the Thompsons, alleging that all matters of fact and things in controversy had been settled by and between the Thompsons and the companies—but, again, not as to the Williamsons. Then, the motion blithely took the position that the cross-claims of the Williamsons were moot. Query: Why? Attached to the Appellee's motion was an affidavit of Jack T. Norton, who was the Manager of the Division Order and Title Unit for Mobil Oil Corporation. Norton was not an employee of Pro-

ducing, Inc. His affidavit sets out that he had reviewed the four oil division orders and four gas division orders, attached to his affidavit, and found them to be true and correct copies of the original division orders executed by the Williamsons in favor of Mobil Oil Corporation. These division orders, it seems to us, proffered by the Appellee, affirmed, or tended to affirm, the title of the Williamsons.

In any event, the only affidavit proffered by the Appellee was the affidavit of Norton and it does not refer to the allegations in the motion of Appellee.

There is a reply or response by the Williamson defendants which is sworn to. The Williamson defendants had not consented to any withholding of their royalties by Producing, Inc. This response of the Williamson defendants, in our opinion, gives rise to important, material issues of fact as well as important, paramount questions of law.

*Rule 166–A(c)* provides that the judgment sought upon the motion will be rendered forthwith if the pleadings, admissions, affidavits, authenticated or certified public records, inter alia, if any, on file at the time of the hearing, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion. We decide that, under this record, there are material issues of fact raised and that the moving party has not shown that it is entitled to judgment as a matter of law.

We also determine that the second reply of the Williamson defendants, to the supplemental motion for summary judgment by the Appellee, creates a genuine issue of material fact and resulting, paramount questions of law, concerning the Williamsons' attorneys' fees and expenses. We think that interest on late payments of royalties is a material fact issue. We do not hold, however, that the Williamsons have conclusively proved a breach of contract as a matter of law. Hence, having found error, we reverse the judgment and remand the cause for a trial on the merits.

REVERSED AND REMANDED.

BURGESS, Justice, concurring.

I concur in the result. However, I do not view this case as one involving the existence of a genuine issue of material fact. *TEX.R.CIV.P. 166–A* requires that the movant show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion. The movant must show both. I believe there are no genuine issues as to material facts, but that the movant was not entitled to recover as a matter of law. Williamson was not required to prove a material fact issue until Mobil established its entitlement to a summary judgment. Williamson's failure to raise the issue of attorney's fees by proper affidavit is of no consequence. The non-moving party has no burden until the moving party establishes its right to a summary judgment. *Bankers Commercial Life Ins. Co. v. Scott,* 631 S.W.2d 228 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). Since Mobil did not establish its right to summary judgment as a matter of law, *i.e.,* its suspension of royalties was not a breach, the Williamsons were under no obligation to come forth with any summary judgment response. Because the majority has properly remanded, I concur.